<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JEAN LAPPE and RONALD LAPPE, | |
| Plaintiffs, | |
| v. | Civil Action No. 15-0007-BRM-LHG |
| TARGET CORPORATION, WEHTTAM S. BATES, JR., SDD, INC., JOHN DOES 1-10, (representing one or more fictitious defendants) and/or defendant, and ABC CORPORATION 1-10, a name being fictitious (representing one or more fictitious corporations), | **OPINION** |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

This matter is opened to the Court *sua sponte* on an Order to Show Cause that this Court has subject-matter jurisdiction over this matter. (Dkt. No. 11.) Defendants Target Corporation ("Target"), Wehttam S. Bates, Jr. ("Mr. Bates"), and SDD, Inc. ("SDD") (collectively, "Defendants") argue that jurisdiction is proper because non-diverse Defendants SDD and Mr. Bates were fraudulently joined as defendants, and moreover, move to dismiss the claims against SDD and Mr. Bates on this basis. (Dkt. No. 12.) Plaintiffs Jean Lappe ("Ms. Lappe") and Ronald Lappe ("Mr. Lappe") (collectively, "Plaintiffs") contend that the case should be remanded to the state court, because SDD and Mr. Bates were properly joined defendants. (Dkt. No. 15.) For the reasons set forth herein, this action is **REMANDED** to the Superior Court of New Jersey, Law Division, Ocean County.

**I.      BACKGROUND**

This case arises from Ms. Lappe's alleged slip-and-fall at a retail store owned, operated, and maintained by Target. (Compl. (Dkt. No. 1-1) at 6.[1]) According to the Complaint, on December 17, 2012, Ms. Lappe "was caused to fall" at the property "as a result of the negligent cleaning, maintenance, inspection, supervision and/or failure to correct a dangerous condition . . . by [Target]." (*Id.* at 6.) Plaintiffs allege that this fall caused Ms. Lappe to "sustain severe and disabling injuries which caused her great pain and suffering, mental anguish, incapacitating her from pursuing her usual activities, and has necessitated her to obtain medical treatment, incurring medical expenses; past, present, and future." (*Id.* at 12.) Plaintiffs also plead that "as a result of the negligence and carelessness of the Defendants, [Mr. Lappe, as Ms. Lappe's spouse,] has and will be obliged to expend large sums of money in an endeavor to treat and cure the injuries sustained by [Ms. Lappe], and in addition, [Mr. Lappe] has sustained the loss of her services, society and companionship." (*Id.* at 12.) Additionally, Plaintiffs bring claims against Mr. Bates, an employee of Target who was allegedly responsible for the maintenance and supervision of the store, for causing Ms. Lappe to fall through purportedly "negligent cleaning, maintenance, inspection, supervision and/or failure to correct a dangerous condition." (*Id.* at 8.) Finally, Plaintiffs bring claims against SDD, the lessor of the property at issue,[2] for causing Ms.

---

[1] Because Plaintiffs do not consecutively number the paragraphs in the Complaint, the Court cites to the ECF page numbers.

[2] The Complaint does not specifically identify SDD as the lessor of the property, but rather alleges that both Target and SDD "own[], operate[] and/or maintain[]" the property at issue. (Dkt. No. 1-1 at 6, 9). However, Target asserts in the Notice of Removal, and Plaintiffs do not dispute, that Target leases the property from SDD. (Dkt. No. 1 at ¶ 21.)

Lappe to fall through allegedly "negligent maintenance, design and/or failure to correct a dangerous condition" of the property. (*Id.* at 9.)

On September 29, 2014, Plaintiffs filed a complaint against Target and certain unidentified individual and corporate Does in the Superior Court of New Jersey, Law Division, Ocean County under docket number OCN-L-2827-14 (the "Prior Action") for claims arising from the slip-and-fall. (*Lappe, et al. v. Target Corporation, et al.*, Civ. No. 3:14-cv-06911-FLW-TJB (D.N.J.), Notice of Removal (Dkt. No. 1).) On November 5, 2014, Target removed the Prior Action to the Federal District Court for the District of New Jersey on the basis of federal diversity jurisdiction. (*Id.*) On November 11, 2014, Target filed its answer in the Prior Action. (*Id.* at (Dkt. No. 5).) On November 24, 2014, Plaintiffs requested the Prior Action be dismissed without prejudice. (*Id.* at (Dkt. No. 8).) On December 3, 2014, the Honorable Freda L. Wolfson, U.S.D.J., ordered the dismissal of the Prior Action without prejudice. (*Id.*)

On November 19, 2014, two weeks before the Prior Action was dismissed, Plaintiffs brought the present action, asserting the same claims against Target, along with new claims against SDD and Mr. Bates, in the Superior Court of New Jersey, Law Division, Ocean County, under docket number OCN-L-3544-14. (Dkt. No. 1-1.) On December 31, 2014, Target, with the consent of SDD and Mr. Bates, removed the matter to this Court based on federal diversity jurisdiction. (Dkt. No. 1.)

Plaintiffs reside in and are citizens of New Jersey. (Dkt. No. 1-1 at 6.) Target is a Minnesota corporation with its principal place of business in Minnesota. (Dkt. No. 1 at ¶ 8.) Mr. Bates resides in and is a citizen of New Jersey. (Dkt. No. 1-1 at 8.) The Complaint, Notice of Removal, and the parties' briefings are silent as to SDD's state of incorporation, however, according to the Complaint, SDD's principal place of business is New Jersey. (*Id.* at 9.) In its

3

Notice of Removal, Target asserts that federal diversity jurisdiction is proper, despite the fact that Plaintiffs, SDD,[3] and Mr. Bates are all citizens of New Jersey, because SDD and Mr. Bates are "unnecessary, nominal part[ies] and/or ha[ve] been named under the Doctrine of Fraudulent Joinder" and therefore "should be disregarded for the purposes of determining diversity." (Dkt. No. 1 at ¶¶ 13, 20.) The parties do not dispute that the amount in controversy exceeds the sum or value of $75,000. (*Id.* at ¶¶ 25-26).

On May 27, 2015, the Court entered an Order finding that Target had not satisfied it burden of showing that jurisdiction is proper, because it was not clear from the Notice of Removal that there was complete diversity of citizenship among the parties. (Dkt. No. 11.) Accordingly, the Court ordered Target to show cause why the action should not be dismissed for lack of jurisdiction. (*Id.*) In response to the Order to Show Cause, Defendants argue the Court should not consider the citizenship of SDD and Mr. Bates when determining diversity, and moreover, that the claims against these defendants should be dismissed, because they are unnecessary and nominal parties and were fraudulently joined. (Dkt. No. 12.) Thereafter, on February 1, 2016, the Court ordered that Defendants' submission in response to the Order to Show Cause would be considered a motion to dismiss the claims against SDD and Mr. Bates, and set a full briefing schedule for the motion. (Dkt. No. 14.) Plaintiffs oppose the motion to dismiss, maintaining that the Court does not have subject-matter jurisdiction over this case, because SDD and Mr. Bates are properly joined defendants. (Dkt. No. 15.)

---

[3] "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).

4

For the reasons set forth below, this matter is **REMANDED** to the state court for lack of subject-matter jurisdiction. Additionally, because the Court does not have subject-matter jurisdiction over this matter, Defendants' motion to dismiss is rendered moot.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. A district court has original jurisdiction over a civil action where the litigation involves "citizens of different States" and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. The statute requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required." *Lincoln Benefit*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). Thus, "unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant." *Lincoln Benefit*, 800 F.3d at 104 (marks omitted).

Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case back to state court. 28 U.S.C. § 1447. Grounds for remand include: "(1) lack of district court subject-matter jurisdiction or (2) a defect in the removal process." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993). Additionally, "because subject-matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003). In such circumstances, courts can *sua sponte* raise subject-matter jurisdiction concerns, and may remand the case to state court if not satisfied that jurisdiction is proper. *Id.* at 77.

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). This burden is high, as federal courts rigorously enforce the congressional intent to restrict federal diversity jurisdiction, and therefore, removal statutes are "strictly construed against removal" and "doubts must be resolved in favor of remand." *Id.* at 396-403.

### III. DECISION

The question before this Court is whether complete diversity among the parties exists such that this Court has subject-matter jurisdiction over this action. Target is diverse from Plaintiffs – Target is a citizen of Minnesota and Plaintiffs are citizens of New Jersey. *See Lincoln Benefit*, 800 F.3d at 104 ("A natural person is deemed to be a citizen of the state where he is domiciled. A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business."). Conversely, SDD and Mr. Bates are not diverse from Plaintiffs – all are citizens of New Jersey. Nonetheless, Defendants assert that jurisdiction is proper, and moreover, that SDD and Mr. Bates should be dismissed from the present action, because they are nominal defendants who were fraudulently joined to the present action.[4]

The fraudulent joinder doctrine represents "an exception to the requirement that removal be predicated solely upon complete diversity." *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009). According to the Third Circuit,

---

[4] The Court notes that complete diversity of citizenship in this case would be destroyed even if only one of the non-diverse defendants has been properly joined, but for the purposes of thoroughness the Court will analyze whether both defendants have been fraudulently joined.

6

> joinder is fraudulent if there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment. If the district court determines that the joinder was "fraudulent" in this sense, the court can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction. If, however, the district court determines that it does not have subject-matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand to state court.

*In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (marks and citations omitted).

In evaluating whether joinder was fraudulent, "a court must first ask whether, on the face of the complaint, there are sufficient allegations concerning [defendants'] identity and conduct to justify consideration of their citizenship, and, second, [the court] must look beyond the face of the complaint for indicia of fraudulent joinder." *Id.* at 218 (marks omitted). In this analysis, the court "must assume as true all factual allegations of the complaint" and "must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Brown*, 575 F.3d at 326. Moreover, although the court may consider certain limited "reliable evidence that the defendant may proffer to support the removal," the Third Circuit has cautioned that courts "must not step from the threshold jurisdictional issue into a decision on the merits." *In re Briscoe*, 448 F.3d at 218-220. Importantly, unless the claims against the non-diverse defendants can be deemed "wholly insubstantial and frivolous," the joinder cannot be considered fraudulent. *Id.* at 218. Thus, "where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses." *Id*.

      a.      **Plaintiffs' Claims against SDD**

Defendants argue the claims against SDD are wholly insubstantial and frivolous, because, according to Defendants, SDD cannot be held liable for any injuries that occurred within Target's store. Defendants cite to the lease agreement between SDD and Target, which assigns all duties with respect to the maintenance and repair of the store to Target. (*See* Dkt. No. 1-2.) Defendants argue that because SDD has neither control, ability, nor authority to enter Target's store to maintain, inspect, or remedy any condition, SDD cannot be held liable for personal injuries to Target's invitees.

The New Jersey Supreme Court has set forth the "relatively straightforward" legal principles governing a commercial landlord's liability under New Jersey law as follows:

> Such a landowner must exercise reasonable care for an invitee's safety. That includes making reasonable inspections of its property and taking such steps as are necessary to correct or give warning of hazardous conditions or defects actually known to the landowner. The landowner is liable to an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered.

*Monaco v. Hartz Mt. Corp.*, 178 N.J. 401, 414-15 (2004) (marks and citations omitted).

A commercial landlord's liability may even extend "to cases in which the landowner had no control over the dangerous condition and the condition was not located on its property." *Id.* at 415. Indeed, "neither ownership nor control is the sole determinant of commercial landlord liability when obvious danger to an invitee is implicated." *Id.* at 417. Instead, "whether [a commercial landlord] owes a duty of reasonable care toward another [person] turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Id.* at 418 (quoting *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993)).

Under this standard, New Jersey courts have held that, under certain circumstances, a landowner is not liable for personal injuries suffered by an invitee of a commercial tenant due to lack of proper maintenance or repair when the lease places responsibility for the maintenance or repair on the tenant. *See e.g., Cabrera v. Windmere Inv'rs, L.P.*, Civ. No. A-5907-06T1, 2008 N.J. Super. Unpub. LEXIS 1484, at *2 (Super. Ct. App. Div. May 13, 2008); *Geringer v. Hartz Mountain Dev. Corp.*, 388 N.J. Super. 392, 401 (Super. Ct. App. Div. 2006); *McBride v. Port Auth. of N.Y. & N.J.*, 295 N.J. Super. 521, 526 (Super. Ct. App. Div. 1996). However, inquiry into a commercial landlord's liability "involves 'identifying, weighing and balancing several factors [including] the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" *Monaco*, 178 N.J. at 418 (quoting *Hopkins*, 132 N.J. at 439) (brackets in original). Consequently, the test to determine a landlord's liability is highly situation-specific and fact-intensive, more suitable for a motion summary judgment or trial than a motion to dismiss. *See Monaco,* 178 N.J. at 416 ("we found no duty as a matter of fact--not as a matter of law"); *see also Cabrera*, 2008 N.J. Super. Unpub. LEXIS 1484, at *2 (finding no liability on summary judgment); *Geringer*, 388 N.J. Super. at 401 (same); *McBride*, 295 N.J. Super. at 526 (finding no liability on motion for directed verdict).

On the face of the Complaint, Plaintiffs have successfully pled a colorable claim against SDD. According to the pleadings, Ms. Lappe's slip-and-fall was a direct result of SDD's negligent maintenance, design, and/or failure to correct a dangerous condition within the Target store, which Plaintiffs allege is owned, operated, and maintained by SDD. (Dkt. No. 1-1 at 9.) Taking such allegations as true, Plaintiffs' claim for breach of the duty of care against SDD, as the owner of the property, is not on its face "wholly insubstantial and frivolous." However,

9

Defendants ask the Court to look beyond the face of the Complaint and consider the lease between Target and SDD as evidence that SDD was not responsible for the maintenance or repair of the portion of the property where Ms. Lappe was injured. Defendants argue that based on the terms of the lease alone, the Court can determine that SDD is exempt from liability for any personal injuries that may occur within the premises of Target's store to Target's invitees. The Court finds this argument unpersuasive for two reasons: (1) such a determination would require the Court to step beyond the threshold jurisdictional issue at hand into a decision on the merits and (2) even if the Court were to find that SDD was not responsible for maintenance and repair within Target's store, Defendants have not addressed the other factors that must be considered in determining a commercial landlord's duties.

Defendants ask the Court to step beyond the permissible scope of review of subject-matter jurisdiction and decide the merits of Plaintiffs' claims against SDD. In making such arguments, Defendants urge the Court to grant summary judgment for SDD, pursuant to Fed. R. Civ. P. 56. (Br. of Defs. in Response to Pls.' Opp'n to Defs.' Mot. to Dismiss, (Dkt. No. 16) at 2.) However, the Third Circuit has made clear that although in certain circumstances a court may take a limited look outside the pleadings to determine whether a plaintiff makes a colorable claim against a non-diverse defendant, "that inquiry is far different from the summary judgment type inquiry." *In re Briscoe*, 448 F.3d at 218. Indeed, even the standard of review applied on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is "more searching than that permissible when a party makes a claim of fraudulent joinder." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992). It is reversible error for a district court to convert a jurisdictional inquiry into a motion for summary judgment or motion to dismiss for failure to state a claim. *Id.*; *In re Briscoe*, 448 F.3d at 218. In that regard, as stated *supra*, determining a commercial landlord's liability

in any given case is a fact-intensive inquiry, suitable for summary judgment or trial, rather than a motion to dismiss. Accordingly, in this stage of the proceedings, it would exceed the proper scope of jurisdictional inquiry to make a finding as to whether, pursuant to New Jersey law, the lease between SDD and Target absolved SDD of its alleged duties to Ms. Lappe.

Furthermore, even if the Court were to engage in such an inquiry, Defendants have not met their burden of demonstrating that the claims lack any reasonable basis in fact. Even assuming that SDD had no contractual duty to maintain or repair Target's store, Defendants do not address the other factors in the test to determine a commercial landlord's liability. Specifically, Defendants do not address "the nature of the attendant risk," "the opportunity and ability [of SDD] to exercise care" outside of maintenance or repair of the store's premises, SDD's knowledge of the risk, or "the public interest in the proposed solution." *See Monaco*, 178 N.J. at 418. Such factors may weigh heavily on the Court's determination as to whether "imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Id.* at 418. Without addressing such factors, Defendants cannot show that there is no reasonable basis in fact for Plaintiffs' claims against SDD. *See In re Briscoe*, 448 F.3d at 217 ("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."). Accordingly, Defendants have failed to demonstrate that Plaintiffs' claims against SDD are wholly insubstantial and frivolous.

### b. Plaintiffs' Claims against Mr. Bates

Defendants also argue that Plaintiffs' claims against Mr. Bates lack any basis, as a matter of law, because "Target will be held vicariously liable for Mr. Bates' negligent acts under

11

the doctrine of respondeat superior." (Dkt. No. 12 at 10.) However, it is well established that under New Jersey law, "[t]ort liability of a principal and agent . . . is both joint and several. *Moss v. Jones*, 93 N.J. Super. 179, 184 (Super. Ct. App. Div. 1966). Indeed, "[w]here an injury is caused by the negligence of a servant acting in the line of his employment, a joint action may be maintained against the servant and the master, or against either of them separately." *Walker v. Choudhary*, 425 N.J. Super. 135, 148-49 (Super. Ct. App. Div. 2012) (quoting *Moss*, 93 N.J. Super. at 184). Thus, "[a]lthough the negligence complained of is the same in each action, two distinct and separate persons responsible to the plaintiff arise — the actual tortfeasor and the person vicariously liable for the tortfeasor's tort." *Walker*, 425 N.J. Super. at 149 (citing *McFadden v. Turner*, 159 N.J. Super. 360, 364 (App.Div.1978)). Accordingly, the fact that Target may be liable for Mr. Bates' negligent acts through the doctrine of respondeat superior, does not prevent Plaintiffs from also bringing claims against Mr. Bates for the same negligent acts.

Here, on the face of the Complaint, Plaintiffs have successfully pled colorable claims against Mr. Bates. According to the pleadings, Ms. Lappe's slip-and-fall was a direct result of Mr. Bates' negligent cleaning, maintenance, inspection, supervision and/or failure to correct a dangerous condition within the Target store, which Mr. Bates was allegedly responsible for supervising and/or maintaining. (Dkt. No. 1-1 at 8.) Taking such allegations as true, Plaintiffs' claims for breach of the duty of care against Mr. Bates for his alleged negligence, are not on their face "wholly insubstantial and frivolous." In short, Defendants have failed to demonstrate that Plaintiffs' claims against Mr. Bates have no reasonable basis in law or fact.

    **c.**  **Plaintiffs' Intent to Prosecute the Action against SDD and Mr. Bates**

Defendants assert that Plaintiffs have no real intention to prosecute the claims against SDD and Mr. Bates. According to Defendants, Plaintiffs had access to the identities of SDD and Mr. Bates before they filed the Prior Action. Defendants argue that the fact that Plaintiff did not bring claims against these defendants in the Prior Action, belies their improper motives for joining them in the present action.

First, Defendants assert that Plaintiffs should have known SDD's identity before bringing the Prior Action, because "SDD is and has been the operator of the shopping center." (Dkt. No. 12 at 12.) However, Defendants submit no evidence indicating that Plaintiffs were aware, at the time they filed the complaint in the Prior Action, that SDD was the owner of the property where Ms. Lappe was injured. Furthermore, the fact that Plaintiffs also named as defendants in the Prior Action fictitious corporate Does, who owned the property where Ms. Lappe was caused to fall, implies that Plaintiffs wished to bring claims against the owner of the property, but were unaware of the owner's identity. (*See Lappe, et al.*, Compl. (Dkt. No. 1-1) at 9.[5]) This interpretation is further supported by the fact that shortly after bringing the Prior Action, and before the Prior Action was removed to federal court, on October 14, 2014, Plaintiffs sent Target a demand for answers to interrogatories related to any lease agreement between Target and the owner of the premises at issue. (Dkt. No. 12-1 at 14.) "In determining that a plaintiff actually intends to proceed against Doe defendants, courts have relied on such indicia as an attempt, subsequent to filing the complaint, to identify the Does through discovery . . . or to substitute named defendants." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32

---

[5] Because Plaintiffs do not consecutively number the paragraphs in the complaint in the Prior Action, the Court cites to the ECF page numbers.

(3d Cir. 1985) (citations omitted). The fact that Plaintiffs actively attempted to discover the identity of SDD after filing the Prior Action, and functionally "substituted" SDD for a Doe defendant in the present action, suggests that Plaintiffs intend to pursue their claims against SDD.

Defendants also argue that Plaintiffs should have known Mr. Bates' identity before bringing the Prior Action, because "Bates is identified on the incident report that has been in the plaintiff's possession since the date of the incident." (Dkt. No. 12 at 12.) However, in support of these assertions, Defendants submit only the affidavit of Mr. Bates, in which he states that he "completed the Guest Incident Report with the plaintiff, which she signed and gave her a copy." (Dkt. No. 12-2 at Ex. H at ¶ 8.) This affidavit is not evidence that Plaintiffs were aware of Mr. Bates identity – Mr. Bates does not state that he ever identified himself to Plaintiffs nor does he state that his name was on the incident report. Moreover, Defendants failed to submit a copy of the incident report to the Court, preventing the Court from confirming Defendants' claims that the report identifies Mr. Bates. Contrary to Defendants' assertions, and as with SDD, Plaintiffs past actions in prosecuting their claims against Mr. Bates support the conclusion that they intend in good faith to prosecute such claims. Specifically, in the Prior Action, Plaintiffs named as defendants fictitious individual Does who maintained, controlled, and/or worked at the area where Ms. Lappe was caused to fall. (*Lappe, et al.*, (Dkt. No. 1-1) at 9.) Additionally, shortly after bringing the Prior Action, before it was removed to federal court, Plaintiffs sent Target a demand for answers to interrogatories related to Target's managers who were on duty at the time of Ms. Lappe's fall. (Dkt. No. 12-1 at 14.) Taken together, these facts imply that Plaintiffs wished to bring claims against Mr. Bates in the Prior Action, but were unaware of his identity until he was "substituted" for a Doe defendant in the present action.

14

Finally, Defendants argue that the procedural history of this case and the Prior Action demonstrate that Plaintiffs never intended to prosecute their claims against SDD or Mr. Bates. Specifically, as evidence of Plaintiffs' improper motives, Defendants point to the fact that Plaintiffs moved to dismiss the Prior Action without prejudice and then brought the present action again in state court, rather than moving to join SDD and Mr. Bates as defendants in the Prior Action. However, "[t]he fact that the plaintiffs' motive for joining a Doe defendant is to defeat diversity is not considered indicative of fraudulent joinder." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985). Instead, courts look to whether the plaintiffs have "no real intention in good faith to prosecute the action against the defendants." *In re Briscoe*, 448 F.3d at 217. Here, although the procedural history of this action and the Prior Action is unusual, standing alone, it is not evidence that Plaintiffs' *sole* purpose in joining SDD and Mr. Bates was to defeat diversity.[6] Moreover, the fact that Plaintiffs never moved to remand this action to state court in the five months between its removal and the entry of the Court's *sua sponte* Order to Show Cause, calls into doubt whether Plaintiffs were at all motivated by a desire to defeat diversity. Accordingly, the Court finds that Defendants have failed to demonstrate that Plaintiffs have no real intentions to prosecute their claims against SDD and/or Mr. Bates.

---

[6] Although the Court acknowledges the rather unique and perplexing procedural history of this case, the Court does not find Plaintiffs' procedural choices to be a calculated attempt to avoid a district court's review of a request to join non-diverse parties under 28 U.S.C. § 1447(e). *See Sussman v. Capital One, N.A.*, Civ. No. 14-01945(FLW), 2014 U.S. Dist. LEXIS 151866, at *5 (D.N.J. Oct. 24, 2014) (applying Section 1447(e) and the fraudulent joinder test to a claimant's amendment as a matter of right to join non-diverse parties who would destroy diversity jurisdiction).

15

## IV. CONCLUSION

For the reasons set forth above, the Court finds that neither SDD nor Mr. Bates were fraudulently joined, and therefore, this Court does not have subject-matter jurisdiction over this case. Accordingly, Defendants' motion to dismiss is rendered moot, this matter is remanded to the Superior Court of New Jersey, Law Division, Ocean County, and the case is closed. An appropriate order will follow.


Date: October 27, 2016                          /s/ Brian R. Martinotti_____
                                                **HON. BRIAN R. MARTINOTTI**
                                                **United States District Judge**